2004 ND 179

Michelle HANSEN, Stacey Hanson, and Michelle Hansen, as Personal Representative of the Estates of Gordon and Barbara Erickstad, Plaintiffs and Appellants

v.

Wayne SCOTT, Ray Parra, Rey Selvera, William H. Brooks, Cathy Doyle, Veronica Ballard, Carl Jeffries, Ethel White, Larry Hermance, Cynthia Lyons, Defendants and Appellees

Robert R. Lawrence, John Doe # 1, John Doe # 2, John Doe # 3, John Doe # 4, and John Doe # 5, individually, Defendants.

No. 20040044.

Supreme Court of North Dakota.

Sept. 23, 2004.

Timothy Q. Purdon (argued), Thomas A. Dickson & Justin Roness of Dickson & Purdon, Bismarck, for plaintiffs and appellants.

Rance L. Craft (argued), Ryan D. Clinton, Kristofer S. Monson, Assistant Solicitors General; David A. Harris, Assistant Attorney General, State of Texas, Austin, TX, Scott K. Porsborg (appearance) of Smith Bakke Oppegard Porsborg & Wolf, Bismarck, for defendants and appellees.

Ken R. Sorenson, Assistant Attorney General, Office of Attorney General, Bismarck, for amicus curiae North Dakota

Department of Corrections and Rehabilitation.

NEUMANN, Justice.

[¶ 1] Michelle Hansen, individually and as personal representative of the estates of Gordon and Barbara Erickstad, and Stacey Hanson, the Erickstads' daughters ("daughters") appealed from a summary judgment dismissing their wrongful death and negligence claims against employees of the Texas Department of Criminal Justice ("Texas defendants"). The trial court granted summary judgment dismissing the Texas defendants as immune from suit under Texas law. We affirm.

I

[¶ 2] The daughters' claims against the Texas defendants stem from the murder of their parents by Brian Erickstad and Robert Lawrence, a Texas parolee. This Court recited the underlying facts in *Hansen v. Scott*, 2002 ND 101, ¶ 3, 645 N.W.2d 223:

In May 1997, North Dakota accepted Lawrence, a Texas resident, for parole supervision in North Dakota. In June 1997, Lawrence was released from custody in Texas, and he began living with his sister in Mandan, where he was supervised by North Dakota parole officials under the Interstate Compact. In October 1997, Lawrence was convicted of making a false report to law enforcement officials in Morton County, and in December 1997, North Dakota parole officials notified Texas parole officials about Lawrence's North Dakota conviction and that a second similar charge and driving under suspension and exhibition driving charges were pending against him. In December 1997, North Dakota parole officials also notified Texas parole officials that Lawrence had moved and his new address was not

known. In February 1998, Texas parole officials issued a pre-revocation warrant authorizing North Dakota officials to arrest Lawrence. In February 1998, Lawrence was convicted of making a false report to law enforcement officers in Burleigh County, and he was sentenced to one year in prison with three months suspended. In March 1998, Texas dropped its "hold" and its revocation proceedings against Lawrence because of his North Dakota conviction and sentence. On August 24, 1998, Lawrence was released from prison, but he failed to contact his North Dakota parole officer within 24 hours. On September 11, 1998, North Dakota parole officials informed Texas parole officials that Lawrence had absconded from supervision, and North Dakota was closing its case and recommending Texas issue a warrant for Lawrence's arrest and return to Texas for revocation proceedings. Gordon and Barbara Erickstad were murdered on September 16, 1998.

Lawrence was convicted for the Erickstad murders. The daughters sued the Texas defendants, claiming they failed to send a complete record of Lawrence's criminal history to the North Dakota parole officials, negligently supervised Lawrence while on parole, and failed to issue a warrant for his arrest in a timely manner, all of which contributed to their parents' murder.

[¶ 3] The Texas defendants administer the Interstate Compact for the Supervision of Parolees and Probationers ("Interstate Compact") for the State of Texas. The Interstate Compact was essentially created to establish a system of rules to regulate the interstate movement of parolees and is individually codified by both North Dakota and Texas. The Interstate Compact allows a state the ability to accept a parolee from a different state if certain conditions are met. After a transfer, the "receiving state will assume the duties of visitation of and supervision over probationers or parolees of any sending state." N.D.C.C. § 12–56–01(2). At the time of the murders, Lawrence was being supervised in North Dakota under N.D.C.C. ch. 12–56, the Interstate Compact for Out–of–State Parolee Supervision.

[¶ 4] In the original complaint, the daughters alleged claims against the Texas defendants including wrongful death, survivorship, and 42 U.S.C. § 1983 violations. The trial court granted the Texas defendants motion for summary judgment for lack of personal jurisdiction. The daughters appealed. This Court ruled "personal jurisdiction over the Texas defendants would not offend traditional notions of substantial justice, fair play, or due process of law" and remanded the case to the trial court for further proceedings. *Hansen,* 2002 ND 101, ¶ 1, 645 N.W.2d 223.

[¶ 5] On remand, the Texas defendants again moved for summary judgment. The trial court issued an opinion and order dismissing the Texas defendants, concluding they were immune under Texas law. The daughters requested certification of the dismissal of the Texas Defendants as a final judgment under N.D.R.Civ.P. 54(b). The trial court granted the request and the daughters appeal.

II

[¶ 6] Summary judgment is a procedural device for the prompt and expeditious disposal of an action without a trial if a party is entitled to judgment as a matter of law, and no dispute exists as to the material facts or the reasonable inferences to be drawn from the undisputed facts, or if resolving disputed facts will not change the result. *Azure v. Belcourt Pub. Sch. Dist.,* 2004 ND 128, ¶ 8, 681 N.W.2d 816. Whether the trial court correctly

granted summary judgment is a question of law subject to a *de novo* standard of review. *Iglehart v. Iglehart*, 2003 ND 154, ¶ 9, 670 N.W.2d 343.

[¶ 7] Applying Texas law, the trial court concluded the Texas defendants were immune from suit. On appeal, the daughters argued Texas law should not apply because barring the daughters recovery is against North Dakota public policy. The Texas defendants argued, as a matter of comity, the trial court correctly applied Texas immunity law and the limited application was not against the public policy of North Dakota.

[¶ 8] "Comity is a principle under which the courts of one state give effect to the laws of another state . . . not as a rule of law, but rather out of deference or respect." *Trillium USA, Inc. v. Bd. of County Com'rs of Broward County*, 37 P.3d 1093, 1098 (Utah 2001). Courts apply comity "to foster cooperation, promote harmony, and build good will." *Id.* This Court has stated comity is "a willingness to grant a privilege, not as a matter of right, but out of deference and good will." *Dow v. Lillie*, 26 N.D. 512, 529, 144 N.W. 1082, 1088 (1914). A primary concern is whether the forum state's public policies will be compromised if comity is applied. *Id.*; *Schoeberlein v. Purdue Univ.*, 129 Ill.2d 372, 135 Ill.Dec. 787, 544 N.E.2d 283, 288 (1989) (holding comity was appropriate when the forum state could not be sued under its laws in similar circumstances and application of a sister state's law was consistent with Illinois policies). The United States Supreme Court has held a state is not required to apply a sister state's sovereign immunity statutes when it would violate the state's legitimate public policy. *Franchise Tax Bd. v. Hyatt*, 538 U.S. 488, 496–97, 123 S.Ct. 1683, 155 L.Ed.2d 702 (2003) (relying on *Nevada v. Hall*, 440 U.S.

410, 422, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979)).

[¶ 9] In *Hyatt*, the Supreme Court reviewed whether the California Franchise Tax Board's ("CFTB") total immunity from suit under California law was entitled to full faith and credit in Nevada state court. 538 U.S. at 490, 123 S.Ct. 1683. The Court noted both California and Nevada had conferred immunity on their state agencies and public employees in limited situations. *Id.* at 492, 123 S.Ct. 1683. However, California granted immunity for intentional torts committed within the scope of employment while Nevada did not. *Id.* at 492–93, 123 S.Ct. 1683. Applying the rules of comity, the Nevada Supreme Court held that because Nevada law granted immunity for state employees' negligent acts, it was not against the public policy of the state to apply California law granting immunity for the CFTB's negligent acts. *Id.* at 493, 123 S.Ct. 1683. The Nevada Supreme Court refused to grant comity to the California law granting immunity for intentional torts, stating Nevada's interest in protecting its citizens outweighed California's policy of complete immunity for its taxation agency. *Id.* at 493–94, 123 S.Ct. 1683. The United States Supreme Court declined to resolve the conflict of laws under the Full Faith and Credit Clause, but affirmed the Nevada court stating, "The Nevada Supreme Court sensitively applied principles of comity with a healthy regard for California's sovereign status, relying on the contours of Nevada's own sovereign immunity from suit as a benchmark for its analysis." *Id.* at 499, 123 S.Ct. 1683.

[¶ 10] In the present case, North Dakota and Texas enacted laws limiting the personal liability of state employees. *See* N.D.C.C. ch. 32–12.2, Tex. Civ. Prac. & Rem. Code ch. 101. North Dakota provides employees immunity from personal

liability for negligent acts within the scope of their employment. N.D.C.C. § 32–12.2–02(1). North Dakota does not provide immunity for "[a]ctions of a state employee that constitute reckless or grossly negligent conduct, malfeasance, or willful or wanton misconduct." N.D.C.C. § 32–12.2–01(6). Texas law grants a broader immunity to state employees, only allowing suits resulting from motor vehicle accidents occurring within the scope of employment. Tex. Civ. Prac. & Rem. Code § 101.021.

[¶ 11] Applying rules of comity as adopted in *Hyatt*, North Dakota is not required, nor is it necessary, to grant the Texas defendants the same broad immunity they enjoy in Texas. *Franchise Tax Bd. v. Hyatt*, 538 U.S. at 493–94, 123 S.Ct. 1683. We hold the Texas defendants are immune from suit to the same extent the State of North Dakota would grant immunity to its employees under North Dakota law. Applying the same level of immunity does not compromise the public policy of North Dakota. The Texas defendants are immune from personal liability for negligent acts committed within the scope of employment but would not be immune for acts of gross negligence or intentional misconduct. The daughters do not allege the Texas defendants' conduct was grossly negligent or intentional misconduct. Accordingly, as a matter of law, the Texas defendants are immune under Texas law.

### III

[¶ 12] The trial court applied the choice of laws analysis finding, "[t]he better rule of law requires application of Texas law." We conclude it is unnecessary to apply the choice of laws analysis. We affirm the trial court's summary judgment in favor of the Texas defendants based on the principles of comity.

[¶ 13] MARY MUEHLEN MARING, Acting C.J., CAROL RONNING KAPS-NER, J., and NORMAN J. BACKES and WILLIAM F. HODNY, Surrogate Judges, concur.

[¶ 14] The Honorable NORMAN J. BACKES, Surrogate Judge, and the Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of VANDE WALLE, C.J., and SANDSTROM, J., disqualified.